# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | |
|---|---|
| **PATRICK NEWTON GREEN** | **CIV. ACTION NO. 5:20-01528 SEC P.** |
| **VERSUS** | **JUDGE ELIZABETH E. FOOTE** |
| **CITY OF SHREVEPORT, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## <u>REPORT AND RECOMMENDATION</u>

Before the undersigned magistrate judge, on reference from the District Court, are cross-motions for summary judgment filed by Plaintiff Patrick Green [doc. # 72] and the two remaining Defendants, Jeffrey Bordelon and LeAnn Hodges a/k/a "Detective Bordelon" and "Detective Hodges" [doc. # 78].   Plaintiff's motion is opposed; Defendants' motion is unopposed.   For reasons set forth below, it is recommended that Plaintiff's motion for summary judgment [doc. # 72] be DENIED and that Defendants' motion for summary judgment [doc. # 78] be GRANTED IN PART and DENIED IN PART.

## <u>Background</u>

Plaintiff pro se Patrick Green ("Green"), who is proceeding in forma pauperis in this matter, filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 on or about November 23, 2020, against Defendants City of Shreveport, Jeffrey Bordelon (sued as "Detective Bordelon"), LeAnn Hodges (sued as "Detective Hodges"), and Detective James. Pursuant to court order, Green filed an amended complaint on December 30, 2020.   [doc. #s 4 & 6].

Green's cause of action derives from events that occurred on January 10, 2020.   (Compl. [doc. # 1]).   At approximately 4:00 p.m. that day, Green was sitting outside his deceased father's home when several Shreveport Police detectives and uniformed officers rolled up.   *Id*.   One of

the officers, Detective Bordelon, directed Green to come over to him.  *Id*.  Once Green complied, Bordelon successfully solicited Green's consent to search the home and Green's father's F-150 truck.  *Id*.

After obtaining consent to search, Bordelon entered the home at approximately 4:15 p.m., and, at approximately 4:22 p.m., photographed a television in Green's room, which he texted to someone at 4:25 p.m.  *Id*.  Bordelon exited the room at approximately 4:30 p.m. and notified Green that he was under arrest for stealing the television.  *Id*.  According to Green, he purchased the television, and, therefore, Bordelon lacked probable cause to arrest him.  *Id*.  Although he consented to Bordelon's initial search, Green asserts that Bordelon illegally obtained a subsequent search warrant by falsely telling a judge that his television was stolen.  *Id*.

Following his arrest, Green "informed Bordelon [at 4:37 p.m.] that [he] had a spinal cord injury and could not stand or sit very long . . ."  *Id*.  Although Bordelon gave Green his walking cane, he placed Green in a non-handicap-accessible police car, where he remained for the next three and one-half hours.  *Id*.

Green alleges that, as a result of his lengthy confinement in the backseat of the police unit, he lost his ability to walk, urinate, or to feel either leg.  (Compl. & Amend. Compl.).  He contends that Bordelon "intentionally committed medical neglect for putting a 6' 3", 300 lb. disabled person, in the back seat of a non-handicap-accessible police car . . ."  (Amend. Compl.).  Furthermore, Hodges "could have ordered that [he] be transferred to the Shreveport City Jail but instead she left [him] in the back seat . . ."  *Id*.

Green further alleges that, on June 25, 2020, at a "preliminary hearing," Detectives Bordelon, Hodges, and James intentionally and falsely testified that they saw him on a surveillance video at Ivan Smith Furniture stealing items, driving a stolen truck in the parking lot, and loading stolen items into the bed of the truck.  (Compl.).  Green maintains that the male

in the video was not him, but, instead, his half-brother, Michael.   *Id*.   Green requests the court's assistance to prove that he is "not the man in the Ivan Smith Furniture video . . ."   *Id*.

Green contends that, because of his false arrest, he lost his business, his home was burned to the ground, and he was severely injured.   (Compl.).   Consequently, he prays for an award of $51,000,000.00 to compensate him for his physical injuries and the officers' false testimony against him.   *Id*.

On January 14, 2021, Magistrate Judge Hayes issued a report recommending that Green's false arrest and unlawful search claims be stayed, and that, with the exception of Green's negligence and/or failure-to-monitor claims against Defendants, Bordelon and Hodges, his remaining claims against all Defendants be dismissed, as frivolous, for failure to state a claim upon which relief can be granted.   (Jan. 14, 2021 R&R [doc. # 7]).   The court contemporaneously ordered service on the two remaining Defendants, Bordelon and Hodges. (Jan. 14, 2021 Mem. Order [doc. # 8]).   On July 30, 2021, the District Court adopted the report and recommendation, over Green's objection.   (Order [doc. # 16]).

On November 12, 2021, the two remaining Defendants, Bordelon and Hodges, filed their responsive pleading, which included an invocation of qualified immunity on the basis that all of their actions were performed within their discretionary authority and with a good faith belief in the correctness and legality of such actions.   (Answer [doc. # 24]).

On March 16, 2022, Bordelon and Hodges, filed a motion for summary judgment wherein they invoked qualified immunity and sought dismissal of Green's failure to monitor claim.   [doc. # 33].   On April 20, 2022, Green filed his own "Motion for Summary Judgment," which the Clerk of Court docketed as a memorandum in opposition to Bordelon and Hodges' motion for summary judgment.   [doc. # 37].

On December 13, 2022, the undersigned recommended that the motion for summary

judgment [doc. # 33] filed by Bordelon and Hodges be granted in part and that Green's claims for unreasonable seizure and failure to monitor under 42 U.S.C. § 1983 against said Defendants be dismissed, with prejudice.   (Dec. 13, 2022 R&R [doc. # 56]).   The undersigned further recommended that Green's state law negligence claim against Bordelon and Hodges be stayed, coextensively with his claims for false arrest and unlawful search.   *Id.*

On March 10, 2023, the District Court adopted the report and recommendation, over Green's objection.   (Order [doc. # 58]).   The District Court further remarked that it appeared that Green's criminal proceedings related to his January 10, 2020 arrest had concluded, and, if so, then Green was to file a motion to lift the stay, or otherwise provide the court with a status update.   *Id.*

On March 20, 2023, Green filed a motion to lift the stay, which the court denied because he failed to address whether the criminal proceedings related to his January 10, 2020 arrest had concluded.   [doc. #s 59-60].

On May 18, 2023, Green re-filed his motion to lift this stay, but, this time, represented that, on January 13, 2022, he pled guilty to two "unrelated" felonies, whereupon the "original" felony for theft of a television was dismissed.   [doc. # 65].   On May 26, 2023, the court granted Green's motion and lifted the stay.   (Order [doc. # 66]).

On May 30, 2023, the court ordered the two remaining Defendants, Hodges and Bordelon, to either answer Green's remaining negligence, false arrest, and unlawful search claims (or if warranted, file a motion under Rule 12), or, alternatively, certify that their original answer addressed all claims—both stayed and unstayed.   (Order [doc. # 67]).

On June 28, 2023, Hodges and Bordelon filed a response wherein they stated that their responsive pleading sufficiently addressed the previously stayed causes of action.   (Response [doc. # 68]).   Accordingly, the court issued a scheduling order that included discovery and

dispositive motion deadlines, which were later extended, upon Defendants' motion.   *See* doc. #s 69-71.

On October 26, 2023, Green filed one of the two pending motions for summary judgment whereby he seeks dismissal of Defendants' "claims."   Bordelon and Hodges filed an opposition to Green's motion on December 6, 2023.   (Defs' Opp. Memo. [doc. # 77]).

In addition, on December 13, 2023, Bordelon and Hodges filed their own motion for summary judgment, which seeks dismissal of all claims asserted against them, at Green's cost. [doc. # 78]

Green neither filed a reply brief in support of his motion for summary judgment, nor a response to Bordelon and Hodges' motion.   Moreover the time to do so has passed.   *See* Notices of Motion Setting [doc. #s 73 & 80].   Accordingly, Bordelon and Hodges' motion for summary judgment is deemed unopposed.   *Id*.   The matter is ripe.

<u>**Summary Judgment Standard**</u>

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a).   A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.   *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).   "The moving

5

party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).   Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor.   *Anderson*, 477 U.S. at 255.   While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts."   *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).   There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   *Celotex Corp.*, 477 U.S. at 322-323.   The non-moving party may not rely merely on the allegations and conclusions contained within the pleadings; rather, the non-movant "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."   *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).   The non-movant does not satisfy his burden merely by demonstrating some metaphysical doubt as to the material facts, by setting forth conclusory allegations and unsubstantiated assertions, or by presenting but a scintilla of evidence.   *Little*, 37 F.3d at 1075 (citations omitted).

Moreover, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'"   *Little, supra* (citation omitted) (emphasis in original).   In sum, "[a]fter the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror

could find for the non-movant, summary judgment will be granted." *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000) (citation omitted).

Finally, when a movant bears the burden of proof on an issue, he must establish "beyond peradventure[1] all of the essential elements of the claim . . . to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish his right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

## <u>Analysis</u>

The court observes that Green's remaining claims include constitutional claims for false arrest and unlawful search under 42 U.S.C. § 198 and a state law negligence claim stemming from his extended confinement in a squad car after his arrest. *See* R&Rs and Orders [doc. #s 7, 16, 56, 58].

Green contends that, on January 10, 2020, he was subjected to a false arrest because Bordelon and Hodges did not have probable cause to arrest him for the theft of a television(s) and other items from the Ivan Smith furniture store. Green emphasizes that the televisions found in his home were not stolen and that he was not one of the individuals depicted in surveillance video obtained from the store. Furthermore, the Ivan Smith burglary charge against him was dismissed when he pled guilty to two Brink's burglaries, which, according to him, were unrelated.

Green further argues that, shortly after his arrest on January 10, 2020, his father's home was searched unlawfully because the precipitating search warrant was premised upon an affidavit that inaccurately recited the size of one of the televisions in his home and incorrectly

---

[1]   I.e., beyond doubt.

characterized the televisions as "stolen," without any basis for that conclusion.

In his motion for summary judgment, Green seeks the dismissal of "Defendants' claims," as a matter of law.   However, Defendants have not asserted any "claims" against Green. Accordingly, the court will consider the arguments advanced by Green in his motion within the context of Bordelon and Hodges' motion for summary judgment.

In their motion, Bordelon and Hodges advance two arguments to support the dismissal of Green's false arrest and unlawful search claims:   1) the claims are barred by the favorable termination rule recognized in *Heck v. Humphrey*, 512 U.S. 477 (1994); and/or 2) Green is unable to adduce facts to support all elements of the alleged constitutional violations.

Bordelon and Hodges further contend that Green's amended pleading represents the lone operative pleading in this matter and it does not include a negligence claim.   Consequently, he has failed to state a claim for negligence.   Alternatively, even if Green included a negligence claim in his pleading(s), his purported state law claims for false arrest and unlawful search are subject to dismissal for the same reasons as the parallel federal law claims.

The court will address these arguments, in turn.

## I.    Favorable Termination Rule of *Heck v. Humphrey*

Under the favorable termination rule of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364 (1994):

> a plaintiff [is] barred from bringing a claim under 42 U.S.C. § 1983 that would challenge the validity of an outstanding criminal conviction when such a claim would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Heck,* 512 U.S. at 486, 114 S.Ct. 2364. Instead, a plaintiff [can] only bring a § 1983 claim challenging the constitutionality of h[is] conviction or sentence if [ ]he proved "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a district court's issuance of a writ of habeas corpus." *Id.* at 487, 114 S.Ct. 2364.

*Thomas v. Louisiana, Dep't of Soc. Servs.*, 406 Fed. App'x. 890, 897–98 (5th Cir. 2010).[2] However, "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed in the absence of some other bar to the suit."  *Heck*, 512 U.S. at 487, 114 S.Ct. 2364.

"Determining whether a particular claim is barred by *Heck* is 'analytical and fact-intensive' and requires the court to consider the specifics of the individual claim."  *Smith v. Hood*, 900 F.3d 180, 185 (5th Cir. 2018) (citing *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008)).   In so doing, the court must consider whether "a claim is temporally and conceptually distinct from the related conviction and sentence."  *Id*. (citation and internal quotation marks omitted).   In the end, the question to be considered is "whether the claims are 'necessarily inconsistent' with the conviction, or whether they can 'coexist' with the conviction or sentence without 'calling [it] into question.' "  *Smith, supra* (citing *Ballard v. Burton*, 444 F.3d 391, 400-01 (5th Cir. 2006)).

Here, it is uncontroverted that, on January 13, 2022, Green pled guilty to two counts of simple burglary, and received a sentence of twelve years hard labor as to each count.   *State of Louisiana v. Green*, Dkt. # 381,489 (1st JDC) (Transcript of Proceedings on Jan. 13, 2022); M/Lift Stay, Exh. A [doc. # 65-1].   Specifically, Green pled guilty to Counts One and Four of an Amended Bill of Information, pertaining to two burglaries on December 22, 2019 and January 9,

---

[2]  The Fifth Circuit has held that "*Heck*'s bar extends to convictions obtained through guilty pleas."  *Thomas v. Pohlmann*, 681 Fed. App'x. 401, 406 (5th Cir. 2017) (citing *Connors v. Graves*, 538 F.3d 373, 375-76 (5th Cir. 2008)).   Furthermore, in this circuit, the favorable termination rule applies even when, as here, the plaintiff no longer is in custody.   *Thomas*, 227 F.3d at 301–02 (citation omitted).

2020 of the same facility, a Brink's Inc. business, located at 5150 Interstate Drive, Shreveport, Louisiana.  *Id*., pgs. 2, 5; *see also* Amend. Bill of Information in *State of Louisiana v. Green*, Dkt. # 381489 (1st JDC Jan. 29, 2021); Defs. MSJ, Exh. E [doc. # 78-5].   The same Amended Bill of Information filed in Docket No. 381489 also charged Green with simple burglary and theft of a motor vehicle at Danny Joy Car Sales, Inc. and illegal possession of stolen things, to wit:   a 55" 4K UHD television that had been the subject of a robbery or theft.   *Id*.

As part of Green's guilty plea on January 13, 2022, the court dismissed all other counts and docket numbers pending against Green.   (Jan. 13, 2022 Transcript, pg. 9).   The court also ordered Green's two twelve-year sentences to run concurrently, with credit for time served, beginning on January 9, 2020, [sic] the date that he purportedly was apprehended.   *Id*., pgs. 6-7. By April 10, 2023, however, Green had been released from custody.   *See* Notice of Change of Address [doc. # 63].

Addressing Green's unlawful search claim first, the undersigned recognizes that this Court has held that,

> *Heck* does not bar a § 1983 . . . claim arising from an allegedly unlawful search if (1) the evidence obtained was not introduced at trial; (2) the evidence was erroneously admitted but the error was harmless; or (3) the evidence was admissible under an exception to the exclusionary rule.

*Thompson v. Link*, Civ. Action No. 19-0252, 2019 WL 2397641, at *4 (W.D. La. June 4, 2019) (Foote, J.).   The court also extended the third category to all exceptions to the exclusionary rule, including the good faith exception.   *Id*.

Applying the foregoing here, it is not clear that the items retrieved by the police from Green's father's home were critical to his decision to plead guilty to the two Brink's burglaries.[3]

---

[3]  According to Detective Hodges, the evidence found during the search of the home pursuant to

To be sure, the court does not doubt that some of the evidence recovered likely was relevant to the two Brink's burglaries to which Green pled guilty.    In fact, the state court apparently denied a motion to suppress the evidence.    However, Bordelon and Hodges have not established to what extent the evidence was necessary to a successful prosecution of Green on the Brink's charges.    *Crittindon v. LeBlanc*, 37 F.4th 177, 190 (5th Cir. 2022), *cert. denied,* ___ U.S. ___, 144 S.Ct. 90 (2023) (*Heck* is a defense that a defendant must assert).    They also have not precluded the reasonable probability that the evidence obtained from the alleged unlawful search falls within one or more of the three categories of evidence that the Court has recognized as not subject to *Heck*.    *See Thompson,* Civ. Action No. 19-0252, 2019 WL 2397641, at *4. Accordingly, the undersigned finds that Green's unlawful search claim is not barred by *Heck*.

Turning to Green's false arrest claim, the Fifth Circuit has stressed that the primary focus of a false arrest claim is not the validity of each individual charge, but instead, the validity of the arrest.    *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995).    So long as there is probable cause for any of the charges made, then the arrest is supported by probable cause, and the claim for false arrest fails.    *Id.*; *Cormier v. Lafayette City-Par. Consol. Gov't*, 493 Fed. App'x. 578, 583–84

---

the search warrant included:

    a.  Orange and black electric saw (carport);
    b.  Black hat (living room);
    c.  Black and Blue cellphone (dining room);
    d.  Brown overalls, black boot (Master bedroom closet);
    e.  Security system (a Ring Doorbell device) (Master bedroom);
    f.  Black Hoodie (Spare bedroom);
    g.  White clothing (white hoodie, white pants, white long sleeve shirt) Kitchen area);
    h.  Burnt glove (Master bedroom).

(LeAnn Hodges Affidavit, pg. 13; Defs. MSJ, Exh. A [doc. # 78-1]).

(5th Cir. 2012).[4]   If a plaintiff must prove that there was no probable cause for *any* of the charges for which he was arrested, then such a showing would require a challenge to the validity of his convictions on any of those charges, violating *Heck's* favorable termination rule.   *Id.*

Here, Green was charged not only with the Ivan Smith burglary, but also the burglaries at the Brink's business and The Cove.   (LeAnn Hodges Affidavit, pg. 13; Defs. MSJ, Exh. A [doc. # 78-1]; Booking Report; Pl. Opp. Memo., Exh. I [doc. # 37-3, pg. 146]) (charging Green with four counts of simple burglary, plus one attempted count)).   Green pled guilty to the Brink's burglaries, and, thus, his claim for false arrest is not cognizable in the absence of the invalidation of that conviction, which, to date, has yet to occur.   *Wells,* 45 F.3d at 95; *Cormier,* 493 Fed. App'x. 583–84.

Nonetheless, in the interest of thoroughness, the court will proceed to address both of Green's constitutional claims, i.e., false arrest and unlawful search, on the merits.   *See* discussion, *infra.*

## II.    Individual Liability under § 1983

### a)    General Principles

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983).   Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights

---

[4] Of course, "[i]t is well established that a claim of unlawful arrest, standing alone, does not *necessarily* implicate the validity of a criminal prosecution following the arrest."   *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (citations omitted).

designated therein.  *Id*.  "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983."  *Id*.  (citation omitted).

To state a cognizable claim for relief under 42 U.S.C. § 1983, "a plaintiff must plead two—and only two—allegations . . . First, the plaintiff must allege that some person has deprived him of a federal right.   Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law."  *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020) (citation and internal quotation marks omitted).

However, when, as here, a plaintiff seeks money damages from government officials in their individual capacities under § 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)).   The qualified immunity doctrine balances two often conflicting interests:   "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id*.   As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  *Id*. (citations and internal quotation marks omitted).

In effect, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (citing *Malley v. Briggs,* 475 U.S. 335, 343, 341, 106 S.Ct. 1092

(1986) (internal quotation marks omitted).

Qualified immunity is nominally characterized as an affirmative defense.[5]   However, once raised by defendants, it devolves upon the plaintiff to negate the defense by showing that the officials' conduct violated clearly established law.   *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir.2008) (citation omitted).   Plaintiff's burden is two-pronged.   *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted).   First, a plaintiff must demonstrate that defendant(s) violated a constitutional right under current law.   *Id*.   "Second, [plaintiff] must claim that the defendant[s'] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."   *Id*.   (quoted source and internal quotation marks omitted).   The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."   *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

A law is clearly established when there exists "controlling authority-or a 'robust consensus of persuasive authority'-that defines the contours of the right in question with a high degree of particularity."   *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013).   "Clearly established law is not determined at a high level of generality.   Instead [t]he dispositive question is whether the violative nature of *particular* conduct is clearly established.   The inquiry must look at the specific context of the case."   *Winfrey v. Rogers*, 901 F.3d 483, 493–94 (5th Cir.

---

[5]  Bordelon and Hodges pled qualified immunity in their responsive pleading, which suffices to preserve the issue.   (Answer [doc. # 24]); *Saldana v. Garza*, 684 F.2d 1159, 1164 (5th Cir. 1982) (where defendants claimed reasonable good faith belief in the lawfulness of their conduct in their answers and proposed pretrial order, there was no question but that they had asserted their affirmative defense of qualified immunity).

2018) (citations and internal quotation marks omitted).    Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question *beyond debate*."    *Hogan,* 722 F.3d at 735.    Nonetheless, there is the "rare possibility that, in an obvious case, analogous case law is not needed because the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances."  *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (citations and internal quotation marks omitted).

In the end, the question becomes whether the right is "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right."    *Hogan,* 722 F.3d at 735 (citations and internal quotation marks omitted).    Because it is plaintiff's burden to establish that the challenged conduct violated clearly established law, the district court may, but is by no means obliged to undertake the clearly established law analysis on its own.    *See Joseph,* 981 F.3d at 330.

Ordinarily, "qualified immunity claims should be addressed separately for each individual defendant."    *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir. 2018) (citation omitted); *see also Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007) (overruling district court's decision to consider officers' conduct collectively, merely because they acted in unison).    However, "[s]eparate consideration does not require courts to conduct a separate analysis for each officer in those cases where their actions are materially indistinguishable, it merely requires them to *consider* each officer's actions."    *Meadours*, 483 F.3d at 422 n.3.

b)  Unlawful Search

The Fourth Amendment guarantees the "right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures . . . and [that] no

[w]arrants shall issue, but upon probable cause . . ." U.S. CONST. amend. IV.   The Fifth Circuit

has recognized that,

> [s]ince *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978),
> it has been clearly established that a defendant's Fourth Amendment rights are
> violated if (1) the affiant, in support of the warrant, includes "a false statement
> knowingly and intentionally, or with reckless disregard for the truth" and (2) "the
> allegedly false statement is necessary to the finding of probable cause." *Id.* at 155–
> 56, 98 S.Ct. 2674.

*Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018).

Nonetheless, "negligence alone will not defeat qualified immunity." *Id.* (quoting *Brewer

v. Hayne*, 860 F.3d 819, 825 (5th Cir. 2017).   "[A] proven misstatement can vitiate an affidavit

only if it is established that the misstatement was the product of deliberate falsehood or of

reckless disregard for the truth." *Id.* (citations and internal quotation marks omitted).

Furthermore, "recklessness" requires proof that the defendant "in fact entertained serious doubts

as to the truth of the statement." *Id.* (citations and internal quotation marks omitted).

As recounted earlier, Green contends that , although he initially granted officers consent

to search his home, he revoked his consent once the officers observed certain BEA-branded

televisions in the home and placed Green under arrest.   At that point, the officers exited the

home and applied for a search warrant.

All parties agree that Detective Melissa James ("James") was the officer who applied for

the search warrant.   *See* Pl. MSJ, pg. 2 [doc. # 72]; Search Warrant Affidavit; Defs. MSJ, Exh. F

[doc. # 78-6].[6]   However, the court previously dismissed James from the suit, and Green has not

---

[6] Green submitted the same search warrant application in support of his brief.   (Green MSJ,
Exh. 1 [doc. # 72-5]).

sought to revisit that determination.  *See* R&R and Order [doc. #s 7 & 16].   Moreover, there is no evidence that Hodges and/or Bordelon participated in the search warrant application or otherwise knew or should have known that the application contained inaccuracies.[7] Accordingly, they cannot be liable for any omission or misrepresentation in the application.

Indeed, "officers executing a warrant are entitled to rely in good faith on a facially valid warrant and have no independent duty to investigate the basis of the probable cause outlined in the warrant."  *Rojas v. Kirkpatrick*, No. 15-0354, 2015 WL 6550441, at *10 (W.D. Tex. Oct. 28, 2015), *aff'd,* 643 Fed. App'x. 451 (5th Cir. 2016).   Furthermore, "[i]ssuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant," so long as the warrant, *inter alia*, is not "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *United States v. Shugart*, 117 F.3d 838, 843–44 (5th Cir. 1997) (quoted sources omitted).

The search warrant affidavit completed by Detective James certainly is not barebones. (Search Warrant Affidavit; Defs. MSJ, Exh. F).   James explained in the affidavit that a task force had been assembled to address a crime spree of various businesses that spanned the period from November 25, 2019 through January 9, 2020.  *Id*.   She stated that, on November 25, 2019, an Ivan Smith Furniture store was "burglarized at which time two 55-inch BEA flat screen TVs were removed along with a wall clock and statue."  *Id*.   The next day, officers found the burned

---

[7] To face liability for a false statement in a warrant application, a law enforcement officer "must have assisted in the preparation of, or otherwise presented or signed a warrant application . . ." *Terwilliger v. Reyna*, 4 F.4th 270, 283 (5th Cir. 2021) (citation omitted).   If the officer does not present or sign the affidavit, liability attaches only if he or she "helped prepare the complaint by providing information for use in it." *Id*.   (citation omitted).

remains of the getaway vehicle, which was owned by Maxwell Ary, who is the brother of David Ary, both of whom are cousins of Patrick Green.  *Id.*  James also detailed the circumstances of the other related burglaries, which included:   a December 8, 2019 attempted burglary of the Cove; a December 22, 2019 theft of a 2008 GMC Sierra pickup truck at Danny Joy Auto Sales, which then was used that same date to force entry into a Brink's, Inc. location to steal $13,000 in rolled and used coins; a December 25, 2019 burglary at the Cove, utilizing a single cab Ford F-150; the January 1, 2020 attempted burglaries of two Family Dollar stores; a January 6, 2020 theft of an Acura MTX from Vic Garrett Motors, which was used that same date to steal an ATM from a Super S Mart store; and the January 9, 2020 theft of $15,000 in coins from Brinks, Inc. using yet another stolen vehicle.  *Id.*

Fortunately, the second (January 9) burglary at Brinks, Inc. triggered an alarm, and a responding police unit observed a truck traversing a field in a suspicious manner, as well as a 2013 Volkswagen, with an Oklahoma tag, that had pulled up to the sidewalk.  *Id.*  Officers ran the tag on the Volkswagen and it came back registered to Christina Alexander, who officers later determined was Patrick Green's girlfriend.  *Id.*  Meanwhile, as the responding officer approached the truck in the field, the suspects fled on foot.  *Id.*  Officers inspected the truck and discovered several thousand dollars-worth of rolled and loose coins in the bed of the truck.  *Id.*

Another responding officer encountered David Ary walking down the street.  *Id.* Detective James again noted that David Ary was the brother of Maxwell Ary, whose vehicle was used in the Ivan Smith burglary on November 25, 2019.  *Id.*

James explained that officers learned that Patrick Green was residing at 4614 Bethune Avenue and that he was the owner of a single cab Ford F-150 that matched the description of the

18

suspect vehicle observed from the December 2019[8] Cove burglary and the pickup vehicle utilized at the December 22, 2019 Brink's Inc. burglary.   *Id*.

James also explained that Green presently was on parole and was a known burglar of video poker machines and coin-operated poker machines.   *Id*.

Finally, James stated that officers made contact with Green at 4614 Bethune, where they observed a single cab Ford F-150 in the driveway.   *Id*.   Green gave the officers written consent to search the residence, whereupon investigators "observed the two stolen TV [sic] from the Ivan Smith Burglary on 11-25-19.   Along with clothing that matched several of the previous above burglaries."   *Id*.

As stated above, Green faults Detective James for incorrectly listing the sizes of the televisions stolen from Ivan Smith as two 55" BEA televisions, when only one of the stolen televisions was 55" and the other was 65".   *See* Ivan Smith *Transfer Ticket*; Defs. MSJ, Exh. D [doc. # 78-4].   However, Green has not adduced any evidence to show that James's misstatement was a deliberate falsehood or reckless disregard for the truth.   Rather, by all accounts, the officers who entered Green's home pursuant to the initial consensual search, plainly observed the two BEA televisions mounted on Green's wall.   Green, himself, does not dispute that the televisions on his wall were 55" and 65-75" large.   *See* Green MSJ [doc. # 72]. James had nothing to gain by inadvertently describing the size of the observed televisions.

James's statement that the officers had observed the two "stolen" televisions from the Ivan Smith burglary presents a closer question.   Green argues that James and the other officers did not know that the televisions were *stolen*, and, in fact, Green later produced a receipt for a

---

[8]  The affidavit referred to the December 26, not December 25, 2019 burglary of the Cove.

single 55" BEA television from Ivan Smith.    *See* Green MSJ, Exh. 5 [doc. # 72-5, pg. 91].[9]

However, the representation that the two televisions were the ones "stolen" from Ivan Smith is

conclusory.    Therefore, the reviewing magistrate should have reviewed the statement with

caution and taken that circumstance into consideration when deciding whether to grant the

warrant.

     To make the statement in the affidavit clearer and more precise, James should have

written that "officers observed two televisions that *matched* the brand and size of the televisions

stolen from Ivan Smith."    Even so, Green has not shown that James's conclusory statement was

deliberate or that she harbored serious doubts whether the televisions were the ones that were

stolen from Ivan Smith.

     Moreover, even if it could be inferred[10] that James was reckless in her conclusory

representation that the two televisions had been stolen from Ivan Smith, Green still must show

that the allegedly false statements were material to the finding of probable cause.    *Arizmendi v.*

*Gabbert*, 919 F.3d 891, 898 (5th Cir. 2019) (citing *Franks, supra*).    To do so, the court must

"consider the faulty affidavit as if [the] errors [or] omissions were removed[,] . . . [and then]

examine the 'corrected affidavit' and determine whether the probable cause for the issuance of

the warrant survives the deleted false statements and material omissions."    *Id*. (quoting *Winfrey,*

---

[9] As it turns out, after obtaining the search warrant, the officers discovered that the serial number of one of the televisions had been scratched off.    (LeAnn Hodges Affidavit, pg. 13 [doc. # 78-1]). While Green correctly observes that a scratched off serial number does not *establish* that the television was stolen, it also is not exactly a hallmark of innocence.    *Id*. (scratched off serial number is a characteristic of a stolen good).

[10] The Fifth Circuit has suggested that in some unspecified circumstances, recklessness may be inferred directly from the omission itself.    *United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir. 1995) (citation omitted).

*supra*).    Probable cause contemplates a "practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found at a particular place."    *Martinez v. Wallace*, No. 20-0806, 2021 WL 5771876, at *7 (W.D. Tex. Dec. 6, 2021) (quoting *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004).

Here, if the search warrant application is reformed to more accurately read that, pursuant to the consensual search of Green's residence, officers observed two televisions that matched the brand and size of the televisions stolen from the Ivan Smith Furniture store, together with other averments that Green resided at 4614 Bethune Avenue, Green was the current owner of a single cab F-150 that matched the description of the suspect vehicle involved in at least two related burglaries, that, one-day earlier at approximately 3:30 a.m., officers encountered Green's girlfriend and his first cousin near a suspected meeting site of a getaway vehicle, and that the series of listed burglaries shared a common characteristic of other burglaries committed by Green, i.e., theft of video poker machines and coin-operated devices, for which he was on parole, the combination of connections more than suffices to suggest a fair probability that contraband or evidence of a crime would be found at the subject residence.    Accordingly, Green has failed to show that the search warrant was not supported by probable cause, and consequently has failed to carry his burden to overcome the defense of qualified immunity.    *Floyd v. City of Kenner*, No. 06-6414, 2010 WL 4103146, at *4 (E.D. La. Oct. 18, 2010).

c)  False/Unlawful Arrest

Like his unlawful search claim, Green's false/unlawful arrest claim also derives from the Fourth Amendment, which protects the people's right to be free from unreasonable seizures.

U.S. CONST. amend. IV.   An arrest is a "seizure" of a person, and, thus, must be reasonable under the circumstances.   *Loftin v. City of Prentiss, Mississippi*, 33 F.4th 774, 780 (5th Cir. 2022) (citing *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 585 (2018).   "A warrantless arrest is reasonable if the officer has 'probable cause to believe that a criminal offense has been . . . committed.' "   *Id.* (*quoting Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S. Ct. 588, 593 (2004).

"Probable cause exists when all of the facts known by a police officer are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense."   *Texas v. Kleinert*, 855 F.3d 305, 316 (5th Cir. 2017) (citation and internal quotation marks omitted).   Further,

> [t]o determine whether probable cause existed for an arrest, the court examine[s] the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of a reasonable police officer, amount to probable cause. Critically, probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.   Thus, probable cause is not a high bar.

*Loftin*, 33 F.4th at 780 (internal citations and quotation marks omitted).   "The facts must be known to the officer at the time of the arrest; post-hoc justifications based on facts later learned cannot support an earlier arrest."   *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citations omitted).   The officer must be aware of facts to justify a reasonable belief that an offense was being committed, even if the officer did not charge the arrestee with that specific offense.   *Id.* (citation omitted).

Applying the foregoing principles here, the court first observes that Green was arrested by Detective Bordelon, not Detective Hodges.   *See* Sworn Statements from LeAnn Hodges and Jeffrey Bordelon; Defs. MSJ, Exhs. 1-2 [doc. # 33-2, 33-3].   Moreover, Green did not provide

any other argument or basis for imputing liability to Hodges for his January 10 arrest.

As to Bordelon, it is uncontroverted that, in December 2019 and January 2020, he investigated a series of burglaries and determined that they were related.   (Affidavit of Jeffrey Bordelon; Defs.' MSJ, Exh. B [doc. # 78-2]).   The related crime spree began with a burglary at an Ivan Smith Furniture store on November 25, 2019, and culminated with a January 9, 2020, burglary at a Brink's facility.   *Id.*   Bordelon was assigned to a task force that had been formed to investigate the burglaries.   *Id.*   Consistent with the background data provided by Detective James in her search warrant affidavit, *see* discussion, *supra*, Bordelon, Hodges, and James were able to link the getaway vehicle from the January 9, 2020 Brink's robbery to a 2013 Volkswagen registered to Patrick Green's girlfriend, Christina Alexander.   *Id.*   Detectives Bordelon, Hodges, and James then went to the location where the stolen vehicle from the December 22, 2019 Brink's burglary had been found and reviewed surveillance footage from a nearby residence.   *Id.*   The footage showed the driver of the getaway vehicle alighting from it and entering a single cab, light-colored Ford F-150, with a toolbox in the bed, and a dark colored front driver's side rim.   *Id.*   The task force then learned that Patrick Green's father recently had passed away and left him a 1998 Ford F-150 single cab pickup truck.   *Id.*

The detectives interviewed Green's cousin, David Ary, on January 10, 2020, and were able to confirm that Green's girlfriend owned a 2013 Volkswagen, and that Green recently had received and was driving a single cab Ford F-150 that possibly had a toolbox in the bed.   *Id.*   After interviewing David Ary, Detective Bordelon and others, decided to drive by Patrick Green's home at 4614 Bethune Drive, whereupon they observed him sitting on a bench in the front yard.   *Id.*   They also saw a Ford F-150 in the driveway that had a dark colored front,

driver's side rim and a black toolbox in the bed. *Id.* Bordelon believed that the Ford F-150 was the vehicle that officers had observed on the surveillance video for the December 22, 2019, Brink's burglary. *Id.*

Green provided officers with written consent to search his home and vehicle. *Id.* During the search of the home, officers observed two, large, flat screen BEA televisions that matched the description of the televisions reported stolen from Ivan Smith Furniture during the November 25, 2019 burglary. *Id.* After detectives observed the BEA televisions, Green withdrew his consent to search, and Bordelon notified him that he was under arrest. *Id.*[11]

Upon review, it is manifest that, at the time of his January 10, 2020 arrest, Detective Bordelon had a reasonable belief that Green had committed more than one theft or burglary in a series of related burglaries. The court recognizes that, in the greater Shreveport area, there likely is no shortage of light-colored F-150 pickup trucks with black toolboxes in their beds. However, the F-150 observed in the surveillance video had a dark-colored front, driver's-side rim. In other words, the two rims on the driver's side of the pickup did not match one another. This particular detail likely reduces the pool of corresponding F-150 trucks down to less than a handful, if not down to one. When coupled with Patrick Green's criminal history, the fact that his girlfriend's car was observed in the wee hours of the morning near another getaway vehicle, and, then the penultimate discovery of two televisions, from an uncommon brand, hanging on Green's wall that happened to match the description of the televisions stolen from Ivan Smith, it is clear that Bordelon reasonably believed that there was a "substantial chance" that Green had

---

[11] For a lengthier description of the investigation and evidence that task officers had gathered against Green at the time of his arrest, see the Affidavit of LeAnn Hodges. (Defs.' MSJ, Exh. A [doc. # 78-1]).

engaged in criminal activity.

In short, no reasonable trier of fact could return a verdict in favor of Green finding that officers lacked probable cause to arrest him. *See Anderson*, 477 U.S. at 247-48 (to survive defendant's motion for summary judgment, plaintiff need present evidence from which the trier of fact might return a verdict in his favor).[12]

Even if Detective Bordelon did not have probable cause to arrest Green when he did, "qualified immunity immunizes the officer from suit unless that 'officer had fair notice that [his] conduct was unlawful.' " *Loftin*, 33 F.4th at 781–82 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 599 (2004)). Fair notice equates to "clearly established law," and it is plaintiff's onus to show that the law is so clearly established that "every reasonable official" in the defendant-officer's shoes would know not to engage in the complained-of conduct. *Loftin, supra* (citation omitted). "It is not enough to invoke the general principle that the Fourth Amendment prohibits a warrantless arrest without probable cause." *Id*. (quoted source omitted). Rather, plaintiff is tasked with identifying a case where a court found that an officer violated the Fourth Amendment under similar circumstances. *Id*. Green has not done so here. Accordingly, Detectives Bordelon and Hodges are entitled to qualified immunity.

## III.    Remaining State Law Claims

Bordelon and Hodges contend that Green did not set forth any state law negligence

---

[12] Although not directly relevant to the present inquiry, in the hours, days, and weeks following Green's arrest, detectives amassed *even more* evidence against Green. *See* Affidavit of LeAnn Hodges, *supra*. For example, while in jail, Green was recorded telling Christina Alexander to retrieve $5,000 that was stored in the freezer at "the shop." *Id*. When reinterviewed by officers, Ms. Alexander disclosed the location of "the shop" in Waskom, Texas. *Id*. Officers obtained a search warrant for "the shop," wherein they found, *inter alia*, a 3-foot-tall dog statue and a large Roman numeral wall clock that matched the items stolen during the Ivan Smith burglary. *Id*.

claims.   However, plaintiffs, especially unrepresented plaintiffs, need not plead theories of

recovery.   Moreover, this court previously has recognized that, liberally construed, Green set

forth facts that stated a plausible claim for negligence stemming from the officers' decision to

leave Green in the squad car for hours on end, after his arrest.   *See* discussion, *supra*.   Bordelon

and Hodges did not address that claim in their prior motion for summary judgment and did not

do so here.

Nevertheless, when, as recommended here, all claims which conferred federal subject

matter jurisdiction are dismissed, the court may decline to exercise supplemental jurisdiction

over the remaining state law claims.   28 U.S.C. § 1367(c)(3).   In fact, this is the general rule.

*Priester v. Lowndes County*, 354 F.3d 414, 425 (5th Cir. 2004) (citation omitted).   The twin

interests of comity and efficiency dictate that any remaining state law claims be dismissed

without prejudice.   28 U.S.C. § 1367(c).[13]

## Conclusion

For the above-assigned reasons,

IT IS RECOMMENDED that the motion for summary judgment [doc. # 78] filed by

Defendants Jeffrey Bordelon and LeAnn Hodges a/k/a "Detective Bordelon" and "Detective

Hodges," be GRANTED IN PART, and that Plaintiff Patrick Green's remaining federal law

claims for unlawful search and false/unlawful arrest under 42 U.S.C. § 1983 against said

Defendants be DISMISSED, with prejudice, at Plaintiff's cost.   *See* FED. R. CIV. P. 56; FED. R.

CIV. P. 54(d)(1); 28 U.S.C. § 1920, and LR 54.3

---

[13]   The limitations period is tolled for a minimum of 30 days after dismissal.   *See* 28 U.S.C. § 1367(d).

IT IS FURTHER RECOMMENDED that Defendants' motion for summary judgment [doc. # 78] otherwise be DENIED.

IT IS FURTHER RECOMMENDED that the motion for summary judgment filed by Plaintiff Patrick Green [doc. # 72] be DENIED.

IT IS FURTHER RECOMMENDED that Plaintiff's remaining state law negligence claim(s) be DISMISSED WITHOUT PREJUDICE.   28 U.S.C. § 1367(c).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.   A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.   A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.   Timely objections will be considered by the District Judge before she makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 5th day of February, 2024.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

27